# UNITED STATES DISTRICT COURT
# FOR DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNETH A. THOMAS MD, LLC, a Connecticut limited liability company, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>COVERMYMEDS, LLC, a Delaware company,<br><br>*Defendant*. | Case No. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kenneth A. Thomas MD, LLC ("Thomas" or "Plaintiff") brings this Class Action Complaint against prescription software firm CoverMyMeds, LLC. ("CoverMyMeds" or "Defendant"), to stop its practice of sending unauthorized and unwanted fax advertisements, and to obtain redress for all persons and entities similarly injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

## NATURE OF THE ACTION

1. Defendant CoveryMyMeds is a healthcare services company that markets an online platform to facilitate insurance authorizations for prescription medicines. CoverMyMeds monetizes its services by getting doctors' offices to sign up and manage prescription authorizations through the platform, and, on information and belief, getting pharmacies, drug manufacturers, and insurance companies to pay on a per authorization or bulk basis for completed authorizations.[1]

---

[1] https://www.covermymeds.com/main/partners/

2. Although doctors' offices do not pay for using CoverMyMeds' platform, without doctors' offices participation, CoverMyMeds would be unable to deliver prescription authorizations to pharmacies, drug manufacturers, and insurance companies or otherwise commercialize its services.

3. This case challenges Defendant CoverMyMeds' practice of sending unsolicited faxes to doctors' offices to promote the commercial availability and quality of its prescription authorization platform, and/or to directly solicit doctor's offices to participate in a commercial transaction that monetarily benefits CoverMyMeds.

4. CoverMyMeds sent the faxes at issue to Plaintiff and the Class despite: (i) not having a previous relationship with them; and (ii) never obtaining their consent.

5. As such, Defendant's fax advertisements violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and caused Plaintiff and putative members of the Class to suffer actual harm, including the aggravation and nuisance of receiving such faxes, the loss of use of their fax machines during the receipt of such faxes, and increased labor expenses.

6. Accordingly, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized fax-based marketing activities, as well as an award of statutory and/or actual damages, and costs.

## PARTIES

7. Plaintiff Kenneth A. Thomas MD, LLC is a Connecticut limited liability company headquartered in Stratford, Connecticut.

8. Defendant CoverMyMeds is a Delaware limited liability company headquartered in Columbus, Ohio. CoverMyMeds does business throughout this District, the state of Connecticut, and the entire United States.

## JURISDICTION & VENUE

9. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

10. The Court has personal jurisdiction over Defendant and venue is proper in this District because the wrongful conduct giving rise to Plaintiff's cause of action was directed to this District, and because Plaintiff resides in this District.

**COMMON FACTUAL ALLEGATIONS**

11. Defendant is a for-profit healthcare services company that provides a web-based platform to streamline and automate insurance authorizations for prescription medicines.[2]

12. On information and belief, CoveryMyMeds profits from processing authorizations because pharmacies, drug companies, and insurance providers pay CoverMyMeds on an individual or bulk rate per prior authorization.

13. Drug companies and pharmacies pay CoverMyMeds for prescription authorizations because CoverMyMeds' services result in more authorized prescriptions, and therefore more sales of prescription medicines and profits for drug companies and pharmacies. Insurance companies pay CoverMyMeds for prescription authorizations because CoverMyMeds' services reduce the employee time and, therefore, the cost to insurance companies of verifying prescriptions.[3]

14. Although doctors' offices do not pay for accessing CoverMyMeds' platform, for CoverMyMeds to earn revenue it must solicit doctors to signup for and submit prescription authorizations through the platform. CoverMyMeds also indirectly increases its revenues by growing its user base of doctors' offices which in turn results in more future prescription

---

[22] CoverMyMeds was purchased by McKesson for $1.3 billion in 2017.

[3] https://histalk2.com/2014/09/24/histalk-interviews-matt-scantland-co-founder-covermymeds/

authorization transactions.

15. As Matt Scantland, co-founder of CoverMyMeds explains: "The drug companies and now the health plans pay for [CoverMyMeds'] service…This is a business that has what we call network effects, which means that the more people that use it, the better it gets for everyone."[4]

16. Sending faxes directly to doctors' offices recruiting them to use CoverMyMeds' platform is one way Defendant intentionally "creates that viral process that allow [it] to grow quickly as a network business."[5]

17. In fact, in addition to sending direct fax solicitations to doctors' offices, CoverMyMeds causes additional fax solicitations to be sent to doctors' offices on CoverMyMeds' behalf through CoverMyMeds' pharmacy customers, such as CVS.

18. As CoverMyMeds' founder explained: "We have a huge pharmacy network. Almost every pharmacy in the country, including the big chains, uses our service. Then they initiate a[n authorization], if the doctor's office isn't already a user, we invite them to become a user."[6]

19. CoverMyMeds' faxes constitute advertisements because they (a) promote the commercial availability and/or tout the quality of Defendant's services, (b) solicit doctors' offices to participate in a commercial transaction for the financial benefit of CoverMyMeds, and (c) serve as a pretext for CoverMyMeds to grow its network of doctors' office users, capture more future insurance authorizations, and ultimately increase its profits.

20. CoverMyMeds used a telephone facsimile machine, computer, or other device to

---

[4] https://histalk2.com/2014/09/24/histalk-interviews-matt-scantland-co-founder-covermymeds/

[5] *Id.*

[6] *Id.*

send the fax advertisements at issue.

21. There are many complaints online regarding CoverMyMeds' repeated, unsolicited fax advertisements.[7]

### FACTS SPECIFIC TO PLAINTIFF KENNETH A. THOMAS MD, LLC

22. In January of 2018, CoverMyMeds used a telephone facsimile machine to send an unsolicited fax advertisement to Plaintiff Thomas. (A copy of the fax advertisement is attached hereto as Exhibit A).

23. The fax advertisement promoted the commercial availability and quality of CoverMyMeds services and solicited Plaintiff to sign up for CoverMyMeds' platform.

24. On October 29, 2018, Plaintiff received another unsolicited fax sent on behalf of CoverMyMeds by CVS Pharmacy soliciting Plaintiff to sign up for CoverMyMeds platform and/or participate in a particular commercial transaction for the benefit of CoverMyMeds. At the time Plaintiff received the second fax advertisement from CoverMyMeds, Plaintiff had never signed up for or used CoverMyMeds' platform or services, or otherwise consented to receiving fax solicitations from CoverMyMeds. (A copy of the second fax advertisement is attached hereto as Exhibit B).

---

[7] https://800notes.com/Phone.aspx/1-615-379-2541/2

# CLASS ACTION ALLEGATIONS

25. **Class Definitions:** Plaintiff Thomas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of Class of similarly situated individuals as follows:

> All persons and entities who from four years prior to the filing of this action (1) were sent faxes substantively similar to the faxes sent to Plaintiff, (2) by or on behalf of CoverMyMeds, and (3) from whom CoverMyMeds does not claim to have consent, or claims to have obtained consent in the same manner it claims to have obtained consent from Plaintiff.

The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

26. **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant faxed unsolicited advertisements to thousands of individuals and entities who fall into the definition of the Class. Class membership can be easily determined from Defendant's records.

27. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is a member of the Class, and if Defendant violated the TCPA with respect to Plaintiff, then it violated the TCPA with respect to the other members of the Class. Plaintiff and

the Class sustained damages as a result of Defendant's uniform wrongful conduct.

28. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a) How Defendant gathered, compiled, or obtained the fax numbers of Plaintiff and the Class;

   b) Whether Defendant's faxes constitute advertisements;

   c) Whether Defendant sent the fax advertisements without consent; and

   d) Whether Defendant's conduct was willful such that Plaintiff and the Class are entitled to treble damages.

29. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

30. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

31. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of

this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Class)**

32. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

33. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C).

34. CoverMyMeds' faxes constitute advertisements because they (a) promote the commercial availability and/or tout the quality of Defendant's services, (b) solicit doctors' offices to participate in a commercial transaction for the financial benefit of CoverMyMeds, and (c) serve as a pretext for CoverMyMeds to grow its network of doctors' office users, capture more future insurance authorizations, and ultimately increase its profits.

35. Defendant sent the facsimile advertisements at issue to Plaintiff and members of the Class without their prior express invitation or consent, and despite the lack of any prior

business relationship between it and members of the No Consent Class.

36. By sending the unsolicited advertisement faxes at issue to Plaintiff and members of the Class without their prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(C).

37. As a result of Defendant's conduct, Plaintiff and the members of the Class suffered actual damages, including the conversion or loss of paper and toner consumed in the printing of the faxes, the loss of use of the recipients' fax machines during the time required to receive, review and route the unauthorized faxes, as well as increased labor expenses.

38. Plaintiff and the Class are therefore entitled to a minimum of $500 in damages for each violation under 47 U.S.C. § 227(b)(3)(B). To the extent Defendant's misconduct is determined to be willful, the Court should treble the amount of statutory damages under 47 U.S.C. § 227(b)(3).

39. Additionally, as a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A), to ensure that Defendant's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kenneth A. Thomas MD, LLC, on behalf of itself and the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Kenneth A. Thomas MD, LLC as the representative of the Class, and appointing its counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the TCPA;

C. An order enjoining Defendant from further TCPA violations, and otherwise protecting the interests of the Class;

D. An award of statutory and/or actual damages;

E. An award of pre-judgement interest and costs; and

F.  Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully Submitted,

**KENNETH A. THOMAS MD, LLC**, individually and on behalf of all others similarly situated,

Dated: December 11, 2018

By: */s/ Jason Campbell*
One of Plaintiff's Attorneys

Jason R. Campbell, Esq.
250 First Avenue, Unit 602
Charlestown, MA 02129
(617) 872-8652
jasonrcampbell@ymail.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman*
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Telephone: (877) 333-9427
Facsimile: (888)498-8946

*Attorneys for Plaintiff and the Class*

\* *Pro Hac Vice* Admission to Be Sought